**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  **v.**                                          **Case No. 09-CR-101**

**ROBERT CAMERON**
        **Defendant.**

---

### SENTENCING MEMORANDUM

Defendant Robert Cameron pleaded guilty to possessing a firearm as a felon, contrary to 18 U.S.C. § 922(g)(1). In sentencing him, I first calculated the advisory sentencing guideline range, then, to ascertain the actual sentence, applied the criteria set forth in 18 U.S.C. § 3553(a) to the facts and circumstances of the case. See United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008).

### I. GUIDELINES

The pre-sentence report ("PSR") set a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4) because defendant committed the instant offense subsequent to sustaining a felony conviction of a controlled substance offense. The PSR then recommended a 4-level enhancement under § 2K2.1(b)(6) because defendant possessed the firearm in connection with another felony offense, i.e. possession with intent to deliver marijuana. The PSR noted that police observed defendant drop something prior to his arrest, and the officers later found two bags of marijuana in the area. Defendant objected to the enhancement, denying that he tossed the marijuana found by the officers. The government agreed with the defense objection and did not seek to attribute these drugs to defendant or to argue that his firearm possession

was connected thereto. I agreed with the parties that the government had not proven the applicability of the enhancement and thus declined to impose it.

Subtracting 3 levels for acceptance of responsibility under U.S.S.G. § 3E1.1, I adopted a final offense level of 17. Coupled with defendant's criminal history category of IV,[1] level 17 produced an imprisonment range of 37-46 months.

## II. SECTION 3553(a)

### A. Sentencing Factors

In imposing the ultimate sentence, the district court must consider all of the factors set forth in § 3553(a), <u>United States v. Harris</u>, 490 F.3d 589, 593 (7th Cir. 2007), including:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

---

[1] Defendant also made arguments regarding the computation of his criminal history score, which, without objection, I elected to address under § 3553(a).

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public and rehabilitation of the defendant. § 3553(a)(2). While the court must give respectful consideration to the guidelines in making this determination, it may not presume that the guideline sentence is the correct one. See Nelson v. United States, 129 S. Ct. 890, 892 (2009); Gall v. United States, 552 U.S. 38, 49-50 (2007). Rather, the court must independently determine an appropriate sentence based on all of the circumstances of the case and under all of the § 3553(a) factors. See Gall, 552 U.S. at 49-50; United States v. Carter, 530 F.3d 565, 578 (7th Cir.), cert. denied, 129 S. Ct. 474 (2008); United States v. Taylor, 586 F. Supp. 2d 1065, 1068 (E.D. Wis. 2008).

**B. Analysis**

**1. The Offense**

On February 17, 2009, police heard gun shots, and a short time later saw defendant walk down the street and grab his waistband. Officers tried to talk to defendant, but he took off running. The officers gave chase, saw him jump a fence, and a few minutes later found him hiding in a garage. A record check revealed a probation warrant. The officers returned to the fence and found a loaded handgun lying in the snow on top of defendant's footprint. Defendant later said he ran because he had a gun, which he purchased on the street and could not lawfully possess because he was a felon. He also admitted that he had been on the run from his probation officer.

3

### 2. The Defendant

Defendant was young, just twenty years old, with a modest prior record, but one that landed him in federal court. In August of 2007, he was convicted of felony possession of cocaine with intent to distribute, an offense he committed at age seventeen. See Wis. Stat. § 938.02(1). That case involved a small amount, about 2 ½ grams. The state court imposed and stayed a year in jail and placed him on probation with 60 days condition time, but he performed poorly on supervision, failing to cooperate with drug testing and treatment, cutting off his electronic monitoring bracelet and absconding after receiving an alternative to revocation; his whereabouts were unknown for several months until his arrest in this case. He also had a juvenile adjudication for possession of a dangerous weapon, a pocket knife, from 2005 when he was fifteen years old.

Both the PSR and the defense sentencing memorandum discussed defendant's difficult childhood: his mother was just fifteen when she had him, their living arrangements were unstable, and he apparently spent a lot of time in the care of maternal aunts, who may not have been the best influence.[2] Defendant's father, apparently involved in drug dealing, was murdered when defendant was seven.

Defendant failed to complete high school and had little or no work record. He admitted supporting himself by hustling, selling any drugs he could get his hands on. He also admitted drinking and using marijuana daily before his arrest in this case. He had fathered two children, ages three and one. It appeared that he was involved in their lives, which was good. No child support orders were in place.

---

[2]In his memorandum, defendant discussed the trouble he had finding a suitable residence with any family member, including his aunts, as a condition of bond in this case.

4

Things seemed to be going better following defendant's release on bond in this case. He complied with his pre-trial conditions, abstained from drug use, re-enrolled in school and obtained a job shortly before the first sentencing hearing. Based on this progress, I decided to continue the matter for several months to afford defendant a chance to prove himself. However, he was arrested on a new state charge, possession of an electric weapon (a "tazer"), about one month later and, unable to post bond, remained in custody on that case.[3]

### 3. The Sentence

The guidelines called for 37-46 months, and the government recommended a sentence within the range. While I agreed that prison was needed, I found this recommendation somewhat greater than necessary. Specifically, the criminal history-based component of the guideline calculation produced a somewhat longer term than was necessary to satisfy the purposes of sentencing.

The 2007 cocaine case had a huge impact on the guideline range in this case. In addition to serving as the predicate felony to sustain the offense of conviction, it produced 6 of defendant's 7 criminal history points, and it boosted his base offense level from 14 to 20 under U.S.S.G. § 2K2.1(a). That was more than a non-violent, 2 ½ gram cocaine case, committed by a seventeen-year old, could legitimately support. The original sentence of probation with 60 days condition time produced 2 points under U.S.S.G. § 4A1.1(b). The PSR then added to the 60 days the 12 month sentence activated following defendant's revocation, thus assessing 3 points under U.S.S.G. § 4A1.1(a). That may be a technically correct application of U.S.S.G. § 4A1.2(k), but as a matter of state law the total sentence was just 12

---

[3]That matter was unresolved at the time I sentenced defendant.

months. In Wisconsin, conditional jail time is generally credited against a later revocation sentence. See, e.g., State v. Gilbert, 115 Wis. 2d 371, 380 (1983); State v. Yanick, 299 Wis. 2d 456, 370 (Ct. App. 2007). And, in this instance, the 12 months was imposed and stayed; defendant did not return to state court for a new sentence after revocation. Therefore, the actual sentence on this prior case was 12 months, which would score 2 points. In addition to the offense scoring 3 points based on the sentence, defendant received 3 more points under U.S.S.G. §§ 4A1.1(d) & (e) because he was on probation and committed the instant offense less than 2 years after release.[4] The 2007 cocaine offense also increased defendant's base level from 14 to 20. I could not conclude that this minor drug trafficking case, which involved no weapons or violence, suggested that defendant posed a significant threat with a gun. Finally, I noted that defendant's other scored offense involved possession of a pocket knife when he was just fifteen. While the PSR correctly scored this offense under U.S.S.G. § 4A1.2(d)(2)(B), it was unclear why this matter was handled formally through the criminal justice system. In any event, I could not find that defendant's possession of this small pocket knife suggested that he posed a significant threat with a gun.

This did not mean that no incarceration was warranted.[5] I could not ignore the aggravating circumstances in this case: defendant ran from the police, creating a risk to the officers and others; and he was on probation and in absconder status at the time he committed

---

[4] I note that in the guideline amendments it proposed on January 21, 2010, the Commission has suggested either eliminating § 4A1.1(e) or making it inapplicable if § 4A1.1(d) applies, in order to reduce the cumulative impact of "recency" points and "status" points. United States Sentencing Commission, Proposed Amendments to the Sentencing Guidelines 21-28 (Jan. 21, 2010), http://www.ussc.gov/2010guid/20100121.

[5] At the original sentencing hearing, defendant suggested probation. At the adjourned hearing, he recommended 12-18 months in prison.

6

this offense. He also squandered the chance I gave him when I adjourned this sentencing. I understood the defense argument that the circumstances of defendant's upbringing left him with a limited chance for success, but as an adult he had to start making better choices. There was a need for prison to promote respect for the law and to deter. Defendant had correctional needs, including drug treatment and completing his education, but those needs had to be addressed initially via recommendations to the Bureau of Prisons and later as conditions of supervised release.

Under all of the circumstances, I found a sentence of 21 months sufficient but not greater than necessary. This sentence provided sufficient punishment, deterrence and protection of the public. The sentence varied from the guidelines, but it created no unwarranted disparity based on the mitigating circumstances discussed above. The sentence was based on § 3553(a) and would have been the same regardless of my findings on the disputed guideline issues.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 21 months. I recommended that he be placed at an institution as close to Milwaukee as possible and participate in any substance abuse treatment and GED classes available. On release, I ordered him to serve three years of supervised release, with a drug aftercare and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 19th day of February, 2010.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

7